Filed 5/24/23  In re A.R. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | B316221 |
| | (Los Angeles County Super. Ct. Nos. 20CCJP01563, 20CCJP01563A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| A.R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mary E. Kelly, Judge. Affirmed in part and remanded with instructions.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Father A.R. appeals from a juvenile court order terminating his reunification services with his son, A. He contends the matter must be remanded for further proceedings because the Los Angeles County Department of Children and Family Services (DCFS) and the court failed to comply with the inquiry and notice requirements of the Indian Child Welfare Act (25 U.S.C. § 1901, et seq.) (ICWA). DCFS agrees, as do we, that the legal requirements imposed under ICWA were not satisfied. Accordingly, we remand the matter solely to ensure compliance with ICWA and related state statutes. The remainder of the order is conditionally affirmed.

## BACKGROUND

Because the sole issue on appeal is compliance with ICWA, we limit our summary of the facts to those relevant to that issue except as necessary for context.

A. was born in September 2019. In March 2020, DCFS filed a dependency petition on behalf of A. under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1).[1] The

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

petition alleged that A. was at risk of harm due to violent altercations between father and A.'s mother, S.M., while they were caring for A., as well as mother's abuse of marijuana.[2] A. was detained from both parents and placed with maternal grandmother.

In the Indian Child Inquiry Attachment (ICWA-010(A)), DCFS checked the box indicating that A. "may have Indian ancestry." Father completed a Parental Notification of Indian Status form (ICWA-020) on March 20, 2020. He checked the box stating, "The child is or may be a member of, or eligible for membership in, a federally recognized Indian tribe." He identified Cherokee as a possible tribe and listed paternal great-grandmother as the individual with potential heritage, but provided no further details. Mother also completed the same form, indicating that she had no Indian ancestry as far as she knew.

At the detention hearing in March 2020, the court found father to be A.'s presumed father. The court asked father to confirm his statement that paternal great-grandmother "may have Cherokee in her background"; father stated that was correct. The court continued, "I will need the department to conduct further investigation and follow up and potentially send notices - - I will need the department to send notices as such." Father also informed the court that paternal great-grandmother was deceased. The court ordered DCFS to "ask for any potential collaterals to provide any information." The court found it had no reason to believe ICWA applied with respect to mother.

According to the April 2020 jurisdiction/disposition report, father said he had heard through his family that they might have

---

[2]    Mother is not a party to this appeal.

3

Native American heritage but he did not have any details. Father told DCFS that he would "ask around." The record contains no further information from father.

DCFS sent ICWA notices on April 9, 2020 to mother, father, the Bureau of Indian Affairs, and the Secretary of the Interior. The notice contained A.'s name and date of birth, mother's and father's names, addresses, and date and place of birth, the name and current address of paternal grandmother, and the name of paternal grandfather. It did not contain any information for paternal great-grandparents. Regarding claimed eligibility, the form stated "Native American Ancestry Claimed – Tribe Unknown"; it did not list Cherokee as a possible tribal affiliation. DCFS did not send an ICWA notice to any Cherokee tribes.

DCFS received a response letter from the United States Department of the Interior on April 21, 2020. The letter stated that DCFS's notice "contains insufficient information to determine Tribal affiliation."

At the adjudication hearing in June 2020, the court sustained the petition as to mother and father, found jurisdiction over A. under section 300, subdivisions (a) and (b), and found that removing the child was necessary. The court ordered reunification services and monitored visitation for mother and father. With respect to ICWA, the court noted that father "thought he might have ancestry based on folklore and never identified a national tribe." The court then found that "there is no reason to believe that there is membership in a tribe" and thus that it had no reason to know that A. was an Indian child under ICWA.

DCFS's subsequent reports referred to the court's June 2020 finding that ICWA did not apply. There is no record of any further ICWA investigation by DCFS.

In December 2020, DCFS reported that father was not complying with his case plan, including failing to show up for drug testing, continuing to engage in arguments with mother, and failing to enroll in counseling. DCFS concluded that A. remained at high risk of harm if returned to father.

In a July 2021 report, DCFS reported that father had not been participating in any services, although he continued to sporadically visit A. Father was not present for the 12-month review hearing in August 2021. The court found father was not in compliance with his case plan and terminated his reunification services. The court continued mother's services over DCFS's objection.

Father timely appealed from the court's order terminating his services. The court terminated mother's reunification services in May 2022, while this appeal was pending.[3] In December 2022, the court terminated jurisdiction and established A.'s caretakers as his legal guardians.

## DISCUSSION

The only issue in this case is whether DCFS and the court properly complied with ICWA and related state statutes. Father contends that the court's finding that ICWA did not apply is invalid due to DCFS's failure to discharge its duty of inquiry into A.'s possible Native American heritage and its failure to provide notice to any Cherokee tribes. DCFS concedes that further

---

[3] We granted DCFS's request for judicial notice of the court's minute orders from the May and December 2022 hearings.

inquiry into father's claim of possible Native American ancestry is necessary.

### A. *Requirements*

"In any given case, ICWA applies or not depending on whether the child who is the subject of the custody proceeding is an Indian child." (*In re Abbigail A.* (2016) 1 Cal.5th 83, 90.) Both ICWA and state statutory law define an "Indian child" as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); accord, § 224.1, subds. (a)-(b).)

""Federal regulations implementing ICWA [ ] require that state courts 'ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.' [Citation.] The court must also 'instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.'"" (*In re Y.W.* (2021) 70 Cal.App.5th 542, 551; see 25 C.F.R. § 23.107(a) (2021).)

Additionally, state law "more broadly imposes on social services agencies and juvenile courts (but not parents) an 'affirmative and continuing duty to inquire' whether a child in the dependency proceeding 'is or may be an Indian child.'" (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741-742; see § 224.2, subd. (a); *In re Y.W., supra*, 70 Cal.App.5th at p. 551.)

DCFS's duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the

6

parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) If this initial inquiry creates a "reason to believe" a child is an Indian child, DCFS is required to "make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) If the further inquiry gives DCFS a "'reason to know'" the child is an Indian child, then the formal notice requirements set forth in section 224.3 apply. (§§ 224.2, subd. (d), 224.3, subd. (a); *In re D.S., supra*, 46 Cal.App.5th at p. 1052.) Alternatively, the juvenile court may find that a child is not an Indian child if the agency's "proper and adequate" inquiry and due diligence reveals no "reason to know" the child is an Indian child. (§ 224.2, subd. (i)(2); *In re D.S., supra*, 46 Cal.App.5th at p. 1050.)

"We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence." (*In re H.V.* (2022) 75 Cal.App.5th 433, 438; see also *In re D.S., supra*, 46 Cal.App.5th at p. 1051; § 224.2, subd. (i)(2).) If an inquiry is inadequate, we "must assess whether it is reasonably probable that the juvenile court would have made the same ICWA finding had the inquiry been done properly." (*In re Dezi. C.* (2022) 79 Cal.App.5th 769, 777, review granted Sept. 21, 2022, S275578 (*Dezi C.*).) "If so, the error is harmless and we should affirm; otherwise, we must send it back for the Department to conduct a more comprehensive inquiry." (*Ibid.*)

### B.  *Analysis*

Father contends that DCFS failed to fulfill its duty of initial inquiry required by ICWA and related state law. DCFS concedes its inquiry efforts as to father's heritage were insufficient, and we agree. Despite its statutory obligations and

7

direct orders from the court, DCFS failed to discuss father's heritage claim with any paternal relatives other than father. The duty of inquiry required that DCFS interview, among others, extended family members and others with an interest in the child. (§ 224.2, subd. (b); see *In re A.M.* (2020) 47 Cal.App.5th 303, 322.) DCFS further concedes that its inquiry error was prejudicial. We agree and accordingly remand the matter for DCFS and the juvenile court to conduct further investigation into father's claims of Native American ancestry. We need not reach father's additional claim that the ICWA notices DCFS sent were inadequate. Given our finding of inquiry error, that claim is moot.

**DISPOSITION**

The order terminating father's reunification services is conditionally affirmed. The matter is remanded with instructions to DCFS and the juvenile court to conduct further ICWA inquiry as soon as practicable. If that inquiry reveals evidence of Native American heritage, then DCFS and the court must comply with the additional ICWA requirements, including, if applicable, the notice requirements of section 224.3. If it does not, then the order shall stand.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


CURREY, ACTING, P.J.


DAUM, J.**

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.